UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

JERRY ALEXANDER MENCHU,                              Case No.: 3:12-CV-1366-AC

                     Plaintiff,                    FINDINGS AND
                                           RECOMMENDATION

      v.

UNITED STATED DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

                     Defendant.
_____

ACOSTA, Magistrate Judge:

*Introduction*

      Plaintiff, Jerry Alexander Menchu ("Menchu"), appeals the withholding of information requested by him under the Freedom of Information Act (5 U.S.C. § 552) (the "Information Act") and the Privacy Act (5 U.S.C. § 552a)(the "Privacy Act") from defendant, United States Department of Health and Human Services (the "Agency"). The Agency moves for summary judgment, arguing

that the information was properly withheld under Exemptions 6 and 7(C) of the Information Act. In his cross-motion for summary judgment, Menchu asserts that the information is accessible under section 552a(k)(2) of the Privacy Act.

The court finds that the information withheld should have been provided to Menchu under the Privacy Act. Accordingly, the court recommends granting Menchu's motion for summary judgment and denying the Agency's motion for summary judgment.

*Preliminary Procedural Matter*

In his complaint, Menchu alleges jurisdiction based on the Information Act. (Compl. at 1.) Menchu also alleges that he is entitled to access to information requested under the Information Act, specifically 5 U.S.C. § 522(c)(3). (Compl. at 2.) Based on these allegations, the Agency moved for summary judgment arguing only that the information requested is exempt from disclosure under Information Act. However, Menchu responded to the Agency's motion for summary judgment by filing a cross-motion for summary judgment and arguing that he is entitled to disclosure of the information under the Privacy Act.

While the complaint is void of any mention of the Privacy Act, a letter dated May 16, 2012, and addressed to the Agency, which was filed as an exhibit to the complaint, clearly establishes that Menchu requested the information under both the Privacy Act and the Information Act (the "Letter"). (Compl. Ex. 1 at 3.) In the Letter, Menchu specifically requests:

> Basically all information related to my case Jerry A. Menchu complainant (OCR Transaction No. 12-133131) dated from September 22, 2012 to May 10, 2012 that was received by your agency HHS (OCR) and all information received from your office from September 22, 2012 to May 10, 2012 from defendant Legacy Health System in case OCR Transaction No. 12-133131 allowed by the Privacy Act of 1974, 5 U.S.C. 552a, and the Freedom of Information Act (FOIA), 5 U.S.C. 552, that govern the use of personal information collected by OCR.

Page 2 - FINDINGS AND RECOMMENDATION                                        *{SIB}*

(Compl. Ex. 1 at 6.)

An individual seeking information about himself may proceed under both the Privacy Act and the Information Act. *Viotti v. United States Air Force*, 902 F. Supp. 1331, 1337 (D. Co. 1995). While Menchu did not specifically allege his right to the information under the Privacy Act in his complaint, he clearly asserted such right before the Agency by requesting the information under both acts. In light of Menchu's *pro se* status, the attachment of the Letter as an exhibit to the complaint, the lack of any prejudice to the Agency based on their actual knowledge of Menchu's claim under the Privacy Act as evidenced by the Letter, the Agency's substantive response to Menchu's Privacy Act arguments in his cross-motion for summary, and the absence of an objection from the Agency to Menchu pursuing his Privacy Act claims in this action, the court finds that Menchu has adequately alleged claims under both the Information Act and the Privacy Act. Accordingly, the court will address both claims, as necessary, in this Findings and Recommendation.

*Background*

The court adopts the following factual statement offered by the Agency and not disputed by Menchu.

In October of 2011, the Office for Civil Rights for HHS received a complaint from Plaintiff that Legacy Health System ("Legacy") engaged in unlawful discrimination against him based on his national origin (Latino) and sex (male).[1] Plaintiff alleged that on January 24, 2011, Legacy falsely accused him of harassing and stalking one of its employees and then barred him from Legacy facilities unless he was seeking emergency medical care. Prior to this time, Plaintiff worked as a medical interpreter for a company that provided services to Legacy.

The Office for Civil Rights ("OCR") is responsible for enforcing Title VI of the Civil Rights Act of 1964 which prohibits discrimination on the basis of race, color, or national origin for organizations like Legacy that receive federal assistance.

---

[1]Citations to the record are omitted.

In addition, OCR has the authority to investigate complaints of sex discrimination.

OCR investigated Plaintiff's complaint of discrimination against Legacy. The investigation included an interview of the Legacy employee who filed a complaint against him. One other Legacy employee was interviewed as part of the investigation. In response to Plaintiff's FOIA request, the interview notes were redacted and only the transaction number, the date of the interview, and the fact that it was a phone interview were released to Plaintiff.

In May of 2012, Plaintiff's FOIA request sought all records related to the investigation performed by the OCR in response to his complaint which was designated as Transaction 12-133131. HHS conducted a search and located 1,151 pages of response records and provided 1,125 pages to Plaintiff. Portions of those documents were redacted under various FOIA exemptions and 26 pages were withheld in their entirety. On appeal, additional information was provided to him. As stated, the only remaining dispute involves three pages of interview notes which were taken during the investigation.

(Def.'s Mem. in Supp. of Motion for Summ. J. at 2-3.)

Menchu filed this action on July 30, 2012, seeking the production of the information withheld by the Agency. The parties have reached agreement on all but the three pages of interview notes from a phone interview conducted on March 13, 2012 (the "Notes"). The Agency provided a heavily redacted version of the Notes, which disclosed only the transaction number, the date of interview, and the type of interview. Menchu seeks production of an unredacted version of the Notes.

*Legal Standard*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2012). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of

a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c) (2012). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

Both parties have filed motions for summary judgment. The Agency argues that the Notes

are exempt from disclosure under the Information Act.  Menchu does not contest the Agency's argument but, instead, argues that the Notes are accessible under the Privacy Act.  The first issue to be addressed is the appropriate interplay between the Information Act and the Privacy Act.

Congress enacted the Information Act to "facilitate public access to Government documents." *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  The Information Act is a broad disclosure statute which evidences a strong public policy in favor of public access to information in the possession of federal agencies.  *Maricopa Audubon Soc. v. United States Forest Service*, 108 F.3d 1082, 1085 (9th Cir. 1997).  When a request is made under the Information Act, a governmental agency may withhold all or portions of a document "only if the material at issue falls within one of the nine statutory exemptions found in § 552(b)."  *Id*.  These exemptions "'must be narrowly construed' in light of [the Information Act's] 'dominant objective' of 'disclosure, not secrecy.'" *Id*. (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

On the other hand, the Privacy Act was enacted to protect the privacy of individuals identified in government information systems by regulating the collection, maintenance, use, and dissemination of personal information and prohibiting unnecessary and excessive exchange of such information within the government and to outside individuals.  *Rouse v. United States Dep't of State*, 567 F.3d 408, 413 (9th Cir. 2009).  "The Privacy Act – unlike the Freedom of Information Act – does not have disclosure as its primary goal."  *Henke v. United States Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996).  However, the Privacy Act does allow individuals to access their own records or consent to the disclosure of records to a third party, subject to stated exemptions. Specifically, the Privacy Act provides that:

Each agency that maintains a system of records shall . . . upon request by any

> individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence.

5 U.S.C. § 552a(d)(1) (2012).  Like the Information Act, the exemptions to disclosure found in the Privacy Act "must be narrowly construed and the requirements strictly met." *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1170 (D.C. Cir. 1981).   The Privacy Act provides a cause of action against an agency who refuses to comply with an individual's request to gain access to their records and authorizes the court to "enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him."  5 U.S.C. §§ 552a(g)(1)(B) and 552(g)(3)(A) (2012).

The Privacy Act contains a provision that specifically addresses the relationship between the Privacy Act and the Information Act.  This statute provides that:

> (1) No agency shall rely on any exemption contained in section 552 of this title [the Information Act] to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section.

> (2)  No agency shall rely on any exemption contained in this section to withhold from an individual any record which is otherwise accessible to such individual under the provisions of section 552 of this title [the Information Act].

5 U.S.C. §552a(t) (2012).  On its face, this provision ensures that if a record is accessible to the requesting party under either the Privacy Act or the Information Act, the record must be produced. Numerous courts have adopted this construction. *See Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987)(§ 552a(q)[2] explicitly provides that "[i]f a[n Information Act] exemption

---

[2]5 U.S.C. § 552a(t) was formerly codified as 5 U.S.C. § 552a(q).

covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a[n Information Act] exemption applies, the documents must be released under [the Information Act].");  *Shapiro v. Drug Enforcement Agency*, 762 F.2d 611, 612 (7th Cir. 1985)(court relied on legislative history for § 552a(q) in finding "Congress intends that the courts construe the Privacy Act and the Freedom of Information Act separately and independently so that exemption from disclosure under the Privacy Act does not exempt disclosure under the Freedom of Information Act, and *vice versa*.");  *Wren v. Harris*, 675 F.2d 1144, 1147 (10th Cir. 1982)(under § 552a(q), "if the court finds the records to be accessible to Mr. Wren under the [Privacy Act], the exemptions from disclosure contained in the Information Act would be inapplicable.");  *Irons v. Bell,* 596 F.2d 468, 470 (1st Cir. 1979)("Appellee is correct that under § 552a(q)[3], [Information Act] exemptions do not provide a ground to withhold material available under the Privacy Act.");  *Murray v. Fed. Bureau of Investigation*, 741 F. Supp. 2d 156, 162 (D.C. Cir. 2010)(court found that even though record system at issue was exempt from access provisions of Privacy Act, "[t]o the extent that disclosure of information deemed a 'record' for Privacy Act purposes is permitted under the [Information Act], the Privacy Act allows its release" under § 552a(t)(2));  *Viotti*, 902 F. Supp. at 1337(relying on § 552a(q), court found that "[r]equests for information and documents held by the government can be processed under the Privacy Act or the [Information Act].  If the records are accessible under the Privacy Act, the exemptions from disclosure in the [Information Act] are inapplicable.");  *Quinn v. Dep't of Health and Human Services*, 838 F. Supp. 70, 75 (W.D.N.Y. 1993)(court construed 552a(q) to "explicitly state that

---

[3]The court cited to § 552a(g) but it is clear from the rest of the opinion and the court's quotation of § 552a(g) elsewhere that the court was relying on § 552a(q) in this context.

access to records under each [act] is available without regard to exemption under the other.  In other words, in order to withhold the notes and draft letters, . . . SSA must demonstrate that these documents fall within some exemption under *each* act.); *Savada v. United States Dep't of Defense*, 755 F. Supp. 6, 9 (D.D.C. 1991)(citing § 552a(t), the court held that "[i]f an individual is entitled to a document under [the Information Act] and the Privacy Act, to withhold this document an agency must prove that the document is exempt from release under *both* statutes."); *Fagot v. F.D.I.C.*, 584 F. Supp. 1168, 1173-74 (D.P.R. 1984)(in a combined claim brought under the Privacy Act and the Information Act, § 552a(q) ensures that a "petitioner is entitled to the cumulative results of what both statutes provide."); *Nemetz v. Dep't of Treasury*, 446 F. Supp. 102, 104-5 (N.D. Ill. 1978)(defendant's argument that identities of individual sources was protected by "privacy" exemptions of Information Act was rejected and court relied on § 552a(q) to find that defendants must also meet requirements of Privacy Act exemption to justify withholding of information identifying sources).  Other courts have found that the relationship between the two acts encourages the maximum disclosure allowed under both acts without specifically relying on or addressing § 552a(t).  *See Clarkson v. I.R.S.*, 678 F.2d 1368, 1376 (11th Cir. 1982) ("An individual may utilize the Privacy Act or the [Information Act] or both to seek access to information about himself in agency records and is entitled to the cumulative total of access rights under the two Acts."); *Nat'l Whistleblower Center v. Dep't of Health and Human Services*, 849 F. Supp. 2d 13, 22 (D.D.C. 2012)(records under Privacy Act and Information Act are "available without regard to exemptions under the other; therefore, in order to withhold the documents Plaintiffs seek, OIG must demonstrate that the documents fall within some exemption under each Act."); *Dean v. FDIC*, 389 F. Supp. 2d 780, 788 (E.D. Ky. 2005)("when the [Information Act] does not require disclosure and release of the

record is sought by the individual to whom it pertains, the Privacy Act can require disclosure to that individual.").

The Agency apparently acknowledges this interpretation of § 552a(t), and the resulting interplay between the Acts, stating that "[w]hen read together, these sections provide that [the Information Act] and the Privacy Act work together so that 'no agency may rely on a[n Information Act] exemption to withhold from an individual any record which is accessible to him under the Privacy Act, . . . and conversely, no agency may rely on a Privacy Act exemption to withhold any record which is other accessible to that individual under [the Information Act].'" (Def.'s Resp. To Pl.'s Cross-Motion for Summ. J. at 5-6)(quoting *Subh v. C.I.A.*, 760 F. Supp. 2d 66, 70 n.3 (D.D.C. 2011)). However, two pages later, the Agency argues that because the Notes are exempt from disclosure under the Information Act, the Privacy Act also requires nondisclosure. Specifically, the Agency argues that "[r]egarding [the Information Act] and the Privacy Act, '[t]he net effect of the interaction between the two statutes is that where the [Information Act] requires disclosure, the Privacy Act will not stand in its way, but where the [Information Act] would permit withholding under an exemption, the Privacy Act makes such withholding mandatory upon the agency.'" (Def.'s Resp. To Pl.'s Cross-Motion for Summ. J. at 8)(quoting *The News-Press v. U.S. Dep't of Homeland Security*, 489 f.3d 1173, 1189 (11th Cir. 2007).

An apparent conflict exists with regard to the interaction between the Privacy Act and the Information Act. However, a careful review of the cases establishes a valid reason for the seemingly differing opinions of how disclosure and withholding operate under the two acts.

First, the cases finding that the Privacy Act requires the withholding of information when an exemption to the Information Act allows such withholding addressed requests from third parties in

the absence of consent from the individual whose information was being requested.  In *News-Press*,

the case cited by the Agency, and *Cochran v. United States*, 770 F.2d 949 (11th Cir. 1985), the case

relied on by the *News-Press* court, the plaintiffs were news agencies seeking information about an

individual who had not consented to the disclosure of the requested information.  Both courts

analyzed the request for such records under § 552a(b)(2) of the Privacy Act, which provides that:

> No agency shall disclose any record which is contained in a system of records by any
> means of communication to any person, or to another agency, except pursuant to a
> written request by, or with the prior written consent of, the individual to whom the
> record pertains, unless disclosure of the record would be . . . required under section
> 552 of this title [the Information Act].

*News-Press*, 489 F.3d at 1189; *Cochran*, 770 F.2d at 955.  The courts found that because the news

agencies did not have the consent of the individuals to whom the records pertained, the agencies

could not disclose the requested records unless disclosure was allowed under the Information Act.

*News-Press*, 489 F.3d at 1189; *Cochran*, 770 F.2d at 955.  In other words, the Privacy Act did not

provide for disclosure of the information and the records were accessible to the news agencies only

to the extent authorized under the Information Act.  Consequently, under § 552a(b)(2), the

Information Act exemptions are determinative of whether the records are subject to disclosure under

both acts.  It is in this context that the Eleventh Circuit declared that "where the [Information Act]

requires disclosure, the Privacy Act will not stand in its way, but where the [Information Act] would

permit withholding under an exemption, the Privacy Act makes such withholding mandatory upon

the agency."  *News-Press*, 489 F.3d at 1189.  Section 552a(b)(2) is not applicable when, as in this

case, an individual is requesting records about himself.

  The Agency, throughout its briefing, relies on the premise that the Notes are properly

withheld under the Information Act because they pertain to the Legacy employee who reported

Menchu's objectionable conduct.  Menchu, a third party, is arguably not entitled to the Notes under the Information Act in the absence of consent from the Legacy employee to such disclosure. However, the Notes were in fact created during an investigation of Menchu and are about him, his conduct, and what he is alleged to have done.  Accordingly, Menchu is requesting documents related to himself, not the Legacy employee, and the section of the Information Act relied on by the court in *News-Press* is not applicable to Menchu's request.

Second, and related to the distinction discussed above, in virtually all of the cases in which the court found that records accessible under *either* the Privacy Act or the Information Act must be provided, the courts addressed requests made by individuals for information relating to themselves.[4] In most of these cases, the court considered such requests under § 552a(d), which requires disclosure unless the record falls within a specific exemption found in the Privacy Act.[5]  *Martin*, 819 F.2d at 1187;  *Wren*, 675 F.2d at 1147; *Nat'l Whistleblower*, 849 F. Supp. 2d at 22-25; *Dean*, 389 F. Supp. 2d at 797-98; *Viotti*, 902 F. Supp. at 1335; *Fagot*, 584 F. Supp. at 1174; and *Nemetz*, 446 F. Supp. at 104, 106.  In this scenario, the Privacy Act, like the Information Act, favors broad disclosure of information subject only to specific exemptions identified in the Privacy Act, which must be strictly construed.  The application of §552a(d), rather than § 552a(b)(2), and the underlying goal of the legislature to allow individuals broad access to their own records, supports the conclusion that § 552a(t) requires disclosure of the records sought when allowed under either the Information Act or

---

[4]In *Shapiro*, the court did not identify what information was being sought.  In *Murray*, the plaintiff sought information about who had visited him in prison.  In *Clarkson*, the plaintiff requested information about himself and organizations he was involved in.

[5]In others, the court found that the Privacy Act did not apply because the withheld documents were not maintained in a "system of records" (*Quinn*, 838 F. Supp. at 76); or that the Privacy Act did not apply to records legally compiled prior to passage of the legislation (*Irons*, 596 F.2d at 470).

the Privacy Act.  In fact, the Eleventh Circuit, the court responsible for both *News-Press* and *Cochran*, has clearly stated that "[a]n individual may utilize the Privacy Act or the [Information Act] or both to seek access to information about himself in agency records and is entitled to the cumulative total of access rights under the two Acts" further supporting this conclusion and distinguishing the holdings in *News-Press* and *Cochran*.  *Clarkson*, 678 F.2d at 1376.

Finally, the Eleventh Circuit did not consider, or even mention, § 552a(t) in either *News-Press* or *Cochran*, despite the fact that the provision clearly controls the interplay between the Acts. Instead, the court focused solely on the express language of § 552a(b)(2), which clearly applies only when a third party is requesting information about another and specifically relies on the Information Act to determine when disclosure is appropriate.  In the absence of any discussion of § 552a(t) by the court in *News-Press* or *Cochran*, these cases do not have precedential value with regard to the appropriate construction of that provision.

Based on the clear language of § 552a(t) and the cases specifically construing the language, the court finds that if Menchu is entitled to production of the Notes under either the Privacy Act or the Information Act, the Notes must be produced.  The cases cited by the Agency to support a contrary conclusion are clearly distinguishable, and not relevant to, the construction of § 552a(t).

If Menchu is able to establish that the Notes are accessible under either the Privacy Act or the Information Act, he is entitled to the production of the Notes.  Menchu's only argument is that the Notes are accessible under the Privacy Act, an apparent concession that the Notes fall within an exemption because he has not responded to the Agency's Information Act argument.  Consequently, the court will now consider whether Menchu is entitled to production of the Notes under the Privacy Act.

The Privacy Act applies only to "records" maintained in a "system of records" by a federal "agency" that are retrieved by the name or other identifying information of the individual. Menchu alleges that the Agency is an "agency of the United States" and the Ninth Circuit has recognized that the Agency qualifies as an "agency" for the purposes of the Privacy Act. *See Wilborn v. Dept. of Health and Human Services*, 49 F.3d 597 (9th Cir. 1995)(Privacy Act applied to claim against Department of Health and Human Services), *overruled on other grounds Doe v. Chao*, 540 U.S. 614 (2004).

The Privacy Act defines "record" as "any item, collection or grouping of information about an individual that is maintained by an agency" that contains the individual's name, number, or other specification identifying feature. 5 U.S.C. § 552a(a)(4) (2012). "System of Records" means "a group of any records under the control of an agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(5)(2012). Menchu requested all documents related to his case identified as "OCR Transaction No. 12-133131". (Compl. Ex. 1 at 6.) In a letter dated October 24, 2012, the Agency referred to the records requested by Menchu as a "case file." (Menchu Decl. Ex. D). Additionally, the Agency consistently refers to Menchu's case as "Transaction No. 12-133131" in correspondence to Menchu. (Menchu Decl. Ex.'s C, D, K.) This evidence warrants a finding that the documents requested by Menchu qualify as a record maintained in a system of records, which finding is further bolstered by the Agency's failure to argue to the contrary in its response to Menchu's Privacy Act arguments. Consequently, the court finds that Menchu's request to the Agency for records related to his case falls within the scope of the Privacy Act.

The Privacy Act contains a general exemption for records maintained by the Central

Intelligence Agency and other agencies involved in enforcing criminal laws as well as a provision allowing agencies to promulgate rules to exempt specific systems of records from disclosure. 5 U.S.C. §§ 552a(j) and (k) (2012). As noted by Menchu in his supplemental briefing, the principal function of the Agency is not the enforcement of criminal laws so the general exemption does not apply to it.

The specific exemption relevant to Menchu's request is found at 5 U.S.C. § 552a (k)(2), which in pertinent part provides that:

> **Specific exemptions.** The head of any agency may promulgate rules . . . to exempt any system of records within the agency . . . if the system of records is –
>
> * * *
>
> investigatory material compiled for law enforcement purposes, . . . *Provided, however*, That if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence . . . . [6]

The Agency agrees that the Notes are "investigatory material compiled for law enforcement purposes." The Agency has promulgated regulations which exempt such materials from the disclosure requirements of the Privacy Act. 45 C.F.R. § 5b.11(b)(2)(G). Accordingly, the Notes are exempt from disclosure under Exemption (k)(2) of the Privacy Act unless maintenance of the Notes resulted in a deprivation of Menchu's federal rights.

The Agency argues that Menchu "contends that his federal rights include the denial of his

---

[6] The exemption does not apply to "material within the scope of subsection (j)(2)" of the Privacy Act, which is the general exemption for information "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws" and is not relevant to the Agency. 5 U.S.C. 552a (j)(2) (2012).

rights, privileges, and benefits under Title VII because he was excluded from participating in the investigation of his discrimination claim" and that because Menchu has no federal right or privilege to participate in the investigation, the Notes are exempt from disclosure. While this may be one interpretation of Menchu's allegations and arguments, it is not the only one.

Menchu asserts that Legacy is an organization that receives federal assistance, a fact the Agency concedes in its opening memorandum and in the declaration of Linda Yuu Connor. As an entity receiving federal assistance, Legacy is obligated to comply with Title VI of the Civil Rights Act of 1964 ("Title VI"), and Title XI of the Education Amendments of 1972 ("Title XI"), both of which prohibit Legacy from denying services or benefits based on the race, color, national origin, or sex of the individual seeking such services or benefits. (Connor Decl. Ex. 1 at 1.)

As a result of the claims of harassment made by Legacy employees against Menchu, Legacy barred Menchu from all Legacy facilities, unless he was seeking emergency medical services. Menchu filed a claim with the Agency's Office for Civil Rights, the entity responsible for enforcing Title VI and Title XI for organizations like Legacy that receive federal assistance, alleging that the claims of harassment were false, were brought solely because of his national origin (Latino) and sex (male), and were discriminatory. (Connor Decl. ¶¶ 3, 5. ) During the investigation, the Agency interviewed the Legacy employee who filed the security reports against Menchu. (Connor Decl. ¶ 6.) Based on the investigation, the Agency determined that Menchu's claims of discrimination were not substantiated by the evidence. (Connor Decl. Ex. 1.)

In denying Menchu's claims, the Agency upheld the decision by Legacy to bar Menchu from all Legacy facilities. Therefore, the records created by the Agency during the investigation, and the continued maintenance of such material, deprived Menchu of "a right, privilege, or benefit that he

would otherwise be entitled by Federal law" – the right to be present on, pursue employment at, and seek medical services from, Legacy facilities in a nondiscriminatory manner.

The last hurdle is determining whether the identity of the Legacy employee must be protected.  Under Exemption (k)(2), protection is required only "to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence."  Here, a paragraph found on the front page of the Notes advises that while responses to questions may be released under the Information Act, the Agency generally does not release names or personal information about witnesses.  This is clearly not "an express promise that the identity of the source would be held in confidence."  Additionally, the court notes that the source's initials are found in the Agency's letter of decision and that Menchu appears already to know the identity of Legacy employee who filed the security reports and participated in the Agency's investigation, as evidence by his references to her by name in his correspondence with the Agency.  Consequently, the identity of the Legacy employee is not entitled to protection under Exemption (k)(2).

While the Agency has promulgated regulations which exempt "investigatory material compiled for law enforcement purposes", disclosure requirements of the Privacy Act, the records sought by Menchu deprived him of a right, privilege, or benefit that he would otherwise be entitled to, or eligible for, under federal law.  The Legacy employee who participated in the interview to which the Notes pertain was not expressly promised that her identity would be held in confidence. The court finds that Menchu is entitled to an unredacted copy of the Notes under the Exemption (k)(2) of the Privacy Act.  In light of the prior finding that if Menchu is entitled to production of the Notes under either the Privacy Act or the Information Act, the Notes must be produced under §

Page 17 - FINDINGS AND RECOMMENDATION                                    {SIB}

552a(t), and because the court now finds that Menchu is entitled to the Notes under the Privacy Act,

the court need not address the Agency's arguments that the Notes are exempt from disclosure under

the Information Act.

<em>Conclusion</em>

The Agency's motion (#20) for summary judgment should be DENIED.  Menchu's cross-

motion (#24) for summary judgment should be GRANTED and a judgment should be issued

ordering the Agency to provide an unredacted copy of the Notes to Menchu.

<u>Scheduling Order</u>

The Findings and Recommendation will be referred to a district judge for review.
Objections, if any, are due **July 16, 2013**.  If no objections are filed, then the Findings and
Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy
of the objections.  When the response is due or filed, whichever date is earlier, the Findings and
Recommendation will go under advisement.

DATED this 1st day of July, 2013.

/s/  John V. Acosta
_____
JOHN V. ACOSTA
United States Magistrate Judge